**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ann Vargas,<br><br>         Plaintiff,<br><br>v.<br><br>City of Tucson, et al.,<br><br>         Defendant. | No. CV-18-00311-TUC-RCC<br><br>**ORDER** |

On October 15, 2020, Magistrate Judge Lynette C. Kimmins issued a Report and Recommendation ("R&R") in which she recommended the Court grant summary judgment in favor of Defendant City of Tucson ("City"). (Doc. 74.)[1] Judge Kimmins notified the parties they had fourteen days from the date of the R&R to file objections and an additional fourteen days to file a response. (*Id.* at 18.) Plaintiff filed an objection (Doc. 83), and Defendant a response (Doc. 86). Because Vargas has not (1) shown she was subjected to an adverse employment action within the requisite time period; (2) demonstrated she was qualified for the position of Deputy Director; or (3) provided evidence of similarly situated men treated more favorably, the Court adopts the Magistrate Judge's R&R and grants summary judgment.

**I.   STANDARD OF REVIEW: MAGISTRATE'S R&R**

The standard of review of a magistrate judge's R&R is dependent upon whether or

---

[1] Citations refer to the docket and page numbers generated by the Court's CM/ECF system.

not a party objects: where there is no objection to a magistrate's factual or legal determinations, the district court need not review the decision "under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, when a party objects, the district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

## II.   PLAINTIFF'S COMPLAINT

Plaintiff's only remaining claims at the time of the R&R included Count 1: sex discrimination under Title VII and Count 2: age discrimination under the Age Discrimination in Employment Act. (*See* Doc. 83 at 1, n.1 (withdrawing retaliation claim and Counts 3 & 4).) Plaintiff has since conceded that the age discrimination claim was time barred. (*Id.* at 1.) The Court, therefore, addresses only those allegations related to Vargas's sex discrimination claim.

Vargas worked for the City's Department of Housing and Community Development ("HCD") from September 4, 1992, through her retirement August 4, 2017. (Doc. 28 at 2, ¶¶11, 32.) Vargas started as a Senior Community Services Project Coordinator, a position with an 815 classification; this position was renamed Community Services Project Supervisor in 2004. (*Id.* at ¶¶11–12.)

*a. Job applications*

Vargas alleges she applied for two positions which she did not receive because of the City's discriminatory practices. First, on May 15, 2011, she applied to become the HCD Community Services Program Manager (an 817 classification) but was overlooked. (*Id.* at ¶25.) Second, on June 14, 2014, she applied for the HCD Community Services Administrator position (an 818 classification). (*Id.*) The position was withdrawn and later reposted. (*Id.* at ¶26.) When reposted, it required supervisory management experience, which Vargas did not have. (*Id.*) Vargas admits this requirement "excluded [her] from

competing for the position." (Doc. 62-1 at 10, ¶ 73.) The position was given to a woman, who failed her probationary period. (Doc. 28 at 4, ¶26.) It was then offered to Sign Code Administrator Glen Moyer "without a recruitment process." (Doc. 62-1 at 10 ¶74.)

Vargas also asserts Moyer's subsequent transfer to Interim Deputy Director after the death of the previous Deputy Director was discriminatory. (Doc. 28 at 4, ¶26; Doc. 56-9 at 29.) She believes Moyer was inexperienced, and that Vargas would not have been overlooked for this position absent the City's pattern of discrimination. (Doc. 56-9 at 30.)

### b. Reclassification to Project Manager

Aside from job opportunities, Vargas alleges the City's failure to place her at a higher classification level was discriminatory. Vargas claims from 2006 to 2012, she was working out of classification; performing Project Manager duties (an 816 classification) while only being paid as a Community Services Project Supervisor (an 815 classification). (Doc. 56-9 at 45.) The City did not "relieve her of these out-of-classification duties until 2013." (*Id.*).

Vargas alleges the City failed to adjust her classification to Project Manager despite repeated requests. (Doc. 28 at 3, ¶17–18.) First, she sent an email to Greg Shelko on January 17, 2007, indicating she was currently performing Project Manager work and should be classified as such. (Doc. 28 at 3; Doc. 62-1 at 82–83.) Then, on February 27, 2011, Vargas emailed her supervisor asking for reclassification, but claims she received no response. (Doc. 62-1 at 82.) Finally, on March 1, 2017, Vargas wrote to City Attorney Mike Rankin, requesting a review of her employment history, and complaining about the City's discriminatory practices and failure to reclassify her to an 815 Project Manager despite performing such duties between 2006 to 2012. (*Id.* at 16, ¶119; Doc. 56-9 at 44–53.)

### c. Reclassification to Lead Planner

Vargas's final allegation of discriminatory action arises from the City's notification that she would be reclassified as a Lead Planner. In December 2016, HCD Director Sally Stang sent a memo suggesting changes to several HCD employment

classifications. (Doc. 56-9 at 87.) On February 17, 2017, Interim Human Resources Director Rebecca Hill sent a memorandum approving reclassification of Vargas to Lead Planner (an 815 classification). (*Id.* at 123.) Stang notified Vargas of the proposed change on March 15, 2017.  (Doc. 56-10 at 2.) Although Lead Planner was still an 815 classification, Vargas believed the switch would have constituted a demotion because it was "a significant change in [her] duties and responsibilities." (Doc. 62-1 at ¶91.) However, reclassification never occurred. (Doc. 62-1 at ¶118; Doc. 56-9 at 47.)

### d. Attempted Review of Classification

On April 10, 2017, City Attorney Rankin responded to Vargas's March 1, 2017 communication. (Doc. 56-10 at 7–8.) Rankin informed Vargas that the request to review her classification between 2006 to 2012 was untimely. (*Id.*) Moreover, Rankin stated he was unable to perform a review, and directed her to the proper method to proceed with her grievance. (*Id.*)

On May 4, 2017, Vargas filed a grievance and Multi-Agency Complaint with City Manager Michael Ortega (*Id.* at 14–15; Doc. 62-5 at 234, 244–45.) This grievance was referred to the Office of Equal Opportunity Programs ("OEOP") for jurisdictional review. (Doc. 62-1 at 16, ¶116.)

### e. Retirement

On July 5, 2017, Vargas submitted a resignation letter, effective August 4, 2017. (Doc. 56-9 at 70; Doc. 28 at 5, ¶32.) Upon retirement, she was classified as a Community Services Project Supervisor – the same position she was assigned in 2004. (Doc. 56-9 at 47.) Because she resigned before any transition to Lead Planner occurred, Vargas concedes her position, job duties, and salary were not affected. (Doc. 56-10 at 28, 31–33.)

## III. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986). A material fact is one "that might affect the outcome of the suit under the governing law. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, the dispute must be genuine; that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Initially, the movant must demonstrate why there is no genuine issue of material fact by citing to pleadings, depositions, interrogatory answers, admissions, and affidavits in support, if available. *Celotex Corp.*, 477 U.S. at 323. However, when the burden of proof is nonmovant's, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party has established that there is no genuine issue of material fact, then the non-movant must come forth with evidence that there is a genuine disputed factual issue that may change the outcome of the lawsuit in the non-movant's favor. *Anderson*, 477 U.S. at 248, 249. This showing does not have to be unquestionable; however, the non-movant "may not rest upon the mere allegations or denials of [his] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(e). For instance, a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007). Speculation is also insufficient. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"). Furthermore, "[l]ike affidavits, deposition testimony that is not based on personal knowledge and is hearsay is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment." *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990).

### IV. PLAINTIFF'S OBJECTIONS

The essence of Plaintiff's objections assert the Magistrate Judge did not sufficiently consider Vargas's circumstantial evidence of discrimination and improperly

disregarded past discriminatory incidents. (Doc. 83.) The Court reviews Vargas's objections de novo.

### a. Sex Discrimination Standard

A plaintiff may establish a prima facie case of sex discrimination by alleging: (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) she was exposed to differing treatment than similarly situated employees. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). "A plaintiff's failure to offer evidence establishing a necessary element of [her] prima facie case will ordinarily be fatal to [her] claim." *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).

Furthermore, sex discrimination claims are subject to the *McDonnell Douglas* burden-shifting analysis. *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1341 (2015). Under *McDonnell Douglas*, when a party has met the prima facie factors, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) (citations omitted).

If a plaintiff provides circumstantial evidence of pretext, "the plaintiff must present 'specific' and 'substantial' facts showing that there is a genuine issue for trial." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007). However, Plaintiff's burden is minimal. *Id.*; *see Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1564 (9th Cir. 1994) ("[W]e require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the fact-finder, upon a full record.").

The Magistrate Judge acknowledged that Vargas is a member of a protected class, and that the City had presumed for the purposes of the motion that she was qualified for the position of Project Manager. (Doc. 74 at 6.) So, review was limited to whether (1) an

adverse action occurred, (2) Vargas was qualified for positions other than Project Manager, and (3) Vargas was subject to disparate treatment. (*Id.*)

### b. Adverse Actions Prior to July 12, 2016

Plaintiff does not object to the Magistrate Judge's contention that any actions prior to the statute of limitations deadline are subject to summary dismissal. (Obj. 11, Doc. 83 at 5.) Allegations under Title VII must be filed within 300 days from which the event occurs. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108–09 (2002). Vargas admits that incidents occurring before July 12, 2016 are precluded. (Doc. 83 at 6.) Therefore, any prior acts may be relevant as background only. This includes her allegations that she worked as an out-of-classification Project Manager from 2006 to 2012, which encompasses her request for reclassification on January 17, 2007 and February 27, 2011; and Glen Moyer's assignment to HCD Administrator in 2014. The remaining actions within the limitations period include: Glen Moyer's assignment to the position of Interim Deputy Director, Vargas's reclassification to Lead Planner, and her 2017 grievance requesting reclassification.

### c. Alleged Adverse Actions Subsequent to July 12, 2016

#### i. Notification of Reclassification (Objections 1, 5–8)

The Magistrate Judge determined that Vargas did not suffer an adverse employment action when she was notified of the City's "intent to reclassify her from a Community Services Project Supervisor to a Lead Planner" because (1) she was never reclassified as such, and (2) she had no "change in duties, title, or pay prior to her retirement." (Doc. 74 at 7.)

Vargas believes the Magistrate's conclusion failed to consider that at the time of the notification she should have already been classified and paid as a Project Manager. (*See* Objs. 1, 5–8, Doc. 83 at 3–5.) Therefore, the notification of intent to reclassify was discriminatory because she had been glossed over for previous promotions and reclassifications. (*See id.*) Vargas explains the Magistrate's conclusions "ignore[] . . . evidence that Vargas performed the duties of an 816 classification Project Manager for

- 7 -

many years while being paid at the lesser 815 level." (Objs. 1, 6–7, *id.* at 3–4.) Therefore, Vargas contends that the Court need not consider whether she suffered a *change* in duties, salary, pay grade, or suffered a demotion during the actionable period. (Obj. 6, *id.* at 4.)

Vargas's contention does not undermine the Magistrate's conclusion. To constitute unlawful sex discrimination, a plaintiff must show she suffered an adverse employment action *within the applicable time period*. *See Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018). In addition, the alleged adverse action must "materially affect[] the compensation, terms, conditions, or privileges of . . . employment." *Davis*, 520 F.3d at 1089. While Vargas may use any prior oversight for career advancement as background, this bears no weight as to whether she suffered an adverse action after July 12, 2016. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (finding "a time-barred act [cannot] justify filing a charge . . . that was not independently discriminatory"). Viewing the evidence in the light most favorable to Vargas, there was no adverse action upon notification because there was no change in Vargas's conditions of employment at that time. Until her retirement, Vargas remained within the same classification and pay grade.

ii. Interim HCD Deputy Director Position (Objections 7–11)

The Magistrate Judge found that Glenn Moyer's transfer to Interim Deputy Director was not an adverse action and that Vargas had not shown she was similarly situated to Moyer. (Doc. 74 at 7–8.) The judge noted that in the employment hierarchy, Moyer was an HCD Administrator — a position directly below the previous Deputy Director. (*Id.* at 7.) Upon the death of the acting Deputy Director, Moyer was assigned to the position temporarily, and shared this assignment with two female HCD Administrators. (*Id.*) Moreover, under Administrative Directive 2.01-1A(IV)(A)(1), HCD Director Sally Stang had discretion to designate an individual to "assume substantially all of the duties of a higher classification due to the absence of the incumbent." (*Id.* at 7; Doc. 56-2 at 54.) And so, the Magistrate Judge stated, the temporary appointment of

Moyer did not require a "competitive process" for selection. (Doc. 74 at 7.) Regardless, the Magistrate said, Vargas had not shown the move was adverse or that she was similarly situated to Moyer. (*Id.* at 8.) Vargas was a in a subordinate position to Moyer, and unlike Moyer, Vargas had never supervised staff. (*Id.*)

Vargas contends the Magistrate Judge erred because she did not recognize that (1) Moyer was "promoted over her twice"; (2) the appointment, though discretionary, may still be discriminatory; and (3) Vargas's work experience made her a better fit for the position. (Obj. 9–10, Doc. 83 at 4–5.)

Judge Kimmins's conclusions were unerring. Vargas's arguments do not undermine the Judge's determination that (1) Moyer's position was directly below the position of Deputy Director, while Vargas's was not; (2) the selection was discretionary and did not require an application process; and (3) Vargas, unlike Moyer, did not have supervisory experience. Vargas has not shown that the move was adverse, or that she was similarly situated to Moyer.

But, even if Vargas had shown an adverse action occured, the Magistrate concluded the City had met the *McDonnell Douglas* burden shifting requirement. (Doc. 74 at 8.) That is, Defendants provided a valid, non-discriminatory reason for employing Moyer instead of Vargas; his position as HCD Administrator was situated directly below HCD Deputy Director. (*Id.*) In addition, two female HCD Deputy Directors were also assigned for a term as Interim Deputy Directors, undermining any contention that the selection was based in sex discrimination. (*Id.*) The burden then shifted to Vargas to show that this explanation was pretext. (*Id.*) After reiterating Vargas's circumstantial evidence of pretext, the Magistrate found the evidence did not undermine the City's valid reasons for offering the position to Moyer. (*Id.* at 9.)

Vargas does not challenge the Magistrate's conclusion that the evidence of pretext fails to negate the non-discriminatory reasons for Moyer's selection as Deputy Director. Instead, she argues that the evidence of discrimination prior to 2016 demonstrates a pattern of sex discrimination. (Obj. 10, Doc. 83 at 5–6.) The Court agrees with the

Magistrate Judge, "Even if the City discriminated against Plaintiff with respect to another position during an earlier time, that does not raise a genuine issue of material fact regarding whether the City's non-discriminatory reasons for appointing Moyer are not entitled to credence." (Doc. 74 at 9.)

       iii. HCD Community Services Administrator Position (Obj. 2–3, 10–11)

Defendants contend that the challenge to "Moyer's alleged non-qualification for the HCD Community Services Administrator position is time-barred. (Doc. 86 at 3.) Vargas does not argue that Moyer's selection to HCD Administrator is within the limitations period. Rather, Vargas argues the 2015 move should be considered an underlying discriminatory action which placed Moyer in a position to ultimately obtain the Interim Deputy Director position. (Obj. 2, 9–10, Doc. 83 at 3, 5.) Vargas believes the HCD Administrator position should not have been given to Moyer, and that she was overlooked despite having HUD experience that Moyer lacked. (Obj. 2, *id.* at 3; Doc. 62 at 18, ¶¶119–124.)

This multilayered "what if" hypothetical does not negate the fact that the 2015 alleged discriminatory act occurred beyond the limitations period and is not actionable, nor does it suggest that Moyer's temporary assignment to Interim Deputy Director—a position for which Vargas was not qualified —was discriminatory.

Still, Vargas claims this lateral transfer is "relevant and admissible as discriminatory acts affecting Vargas's pay." (Obj. 11, Doc. 83 at 5.) But counsel conceded during oral argument that actions prior to July 2016 were used for background purposes and did not affect damages. (Doc. 86-1 at 43.) This argument therefore fails. The Court will not consider the merits of the alleged discriminatory transfer as it is not within the statute of limitations.

Finally, Vargas objects to the Magistrate's conclusion that after Moyer was transferred, he was Vargas's direct supervisor. (Obj. 3, Doc. 83 at 3.) This assertion is supported only by Vargas's claim she was confused as to whom she was to report to as supervisor. (Doc. 62-1 at ¶125.) But this contention is contradicted by Vargas and her

counsel's admissions that Moyer was her supervisor. (Doc. 56-10 at 2, 34; Doc. 83 at 7; Doc. 86-1 at 33–34.) Vargas has not created a genuine issue of fact by providing two contradictory statements.

        iv. <u>Request for Reclassification to Project Manager</u> (Objections 12–14.)

  The Magistrate Judge reiterated that in March 2017, Vargas sent a letter to City Attorney Mark Rankin, stating that from 2006 to 2012, she had performed the duties of a Project Manager but had not been properly compensated. (Doc. 74 at 10.) In Rankin's response, he pointed Vargas to the appropriate means to appeal her classification:

> The City's process for a review of job classification is established in A.D. 2.01–5. Under that process, employees may submit written requests for classification review to the Department Director, together with a detailed description of the need for a classification review and a completed job description questionnaire. I am not in a position to review your job duties and classification.

(Doc. 56-10 at 7–8.) Rankin added that her request to retroactively reclassify her as Project Manager from 2006 to 2012 was untimely:

> [N]either I nor the Department Director (or HR Director) could meaningfully review your duties as performed 11 or even 5 years ago. . . . If you believed that [the decisions not to reclassify] were in error, you needed to pursue those objections at that time. It is far too late now.

(*Id.*) However, Rankin indicated he would ask Human Resources to review her prospective reclassification to Lead Planner "to make sure it is appropriate and conforms to all existing rules." (*Id.* at 8.)

  The Magistrate Judge noted it was Vargas's duty to know and follow the A.D. guidelines and seek reclassification through the proper avenues, but she did not do so. (Doc. 74 at 11.) Moreover, the Magistrate stated the letter made no mention of Vargas's desire to have her current duties and title reevaluated to see if she should be currently classified as Project Manager. (*Id.* at 10.) The Magistrate indicated, "[w]hen an employee fails to comply with the established procedure to request an employee benefit or opportunity, the failure to grant the benefit is not an adverse employment action." (*Id.* at

- 11 -

11 (citing *Campbell*, 892 F.3d at 1013–1014).) The Judge determined no adverse employment action occurred since Vargas had not submitted a request for reclassification of her 2017 job duties and title in accordance with the A.D. 2.01–05, despite Rankin's clear direction how to proceed. (*Id.*)

Vargas challenges the Magistrate's conclusions that there was no adverse employment action because (1) Vargas failed to submit her request in accordance with the A.D., and (2) her request to Rankin did not ask for review of her 2017 duties and title. Vargas mentions her request for reclassification in 2007 to show she did seek proper review, but, like all other actions prior to July 12, 2016, this request is time-barred. (*See* Doc. 83 at 6.)

She then asserts that the Magistrate Judge did not consider a different A.D. that requires promotion for out-of-class assignments. (*Id.*) But, Vargas admitted she was relieved of out-of-class responsibilities in 2013, far beyond the limitations period for review. (*See* Doc. 56-9 at 45 (stating she was "relieved of these out-of-classification duties" in 2013 and that only "between 2006 and 2012 [she] served as . . . Project Manager"); *see also id.* at 46, 47 (same).) Furthermore, this argument has no bearing on whether Vargas should have filed her 2017 grievance in accordance with the A.D.

Vargas next argues that she gave the City notice of her desire for an evaluation of her current classification because the subject line of her request was "Request for employee file review and payroll audit." (Doc. 83 at 7.) Furthermore, she explained she wanted a "review of my federally-funded employment history, pay scale and job classification." (*Id.*) This too does not undermine the Magistrate's conclusion because Vargas made no indication in the request that she was currently performing Project Manager duties.

Finally, Vargas believes the Magistrate's reasoning was flawed because she did not consider that the request provided notice to the City of the alleged discrimination. (Obj. 13, Doc. 83 at 6.) Because there was notice, whether Vargas used the proper methods was inconsequential. (*Id.*) Judge Kimmins's conclusion was not based on the

City's lack of notice of prior discriminatory actions. Rather, the judge explained Vargas had not provided notice that she wanted review of her *current* duties to see whether she should be classified as a Project Manager at that time. (*See* Doc. 56-9 at 45–47.) The Court agrees with the Magistrate Judge.

> v. Similarly Situated (Objection 15 & Section III)

The Magistrate found that Vargas had not established that any male was similarly situated to her. (Doc. 74 at 11–13.) Specifically, the Magistrate concluded that Vargas's evidence of other similarly situated men: (1) was too remote in time; (2) was self-serving and without first-hand knowledge; (3) was vague, without specifying salaries of similarly situated men; and (4) lacked "evidence that they were similarly situated in terms of experience, qualifications, or volume or breadth of work . . . ." (*Id.* at 12.)

Vargas does not argue that she provided sufficient evidence of similarly situated men treated differently. Instead, she claims she was the only person who "had the highly-specialized HUD knowledge and skills" and her career advancement opportunities were stymied by the males she mentioned. (Obj. 15, Doc. 83 at 7.) The proposed males did not have HUD experience but were promoted above Vargas. (*Id.*) Because there could be no comparison, she need only show she received "lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors . . . ." (*Id.* (citing *Hein v. Or. Coll. Of Edu.*, 718 F.2d 910, 916 (9th Cir. 1983).)

However, the Magistrate Judge was correct to conclude that the instances were too remote to be compared, or that her evidence consisted only of her affidavit, which was conclusory and not based on personal knowledge. (*See* Doc. 56-9 at 23 (admitting she did not know about the classification of other employees), 126 (conceding she did not know names of employees working as Project Managers with higher pay than her); *see also Nelson*, 83 F.3d at 1081–82 (speculation cannot prevent granting of summary judgment). The burden was on Vargas to present evidence of a comparable male within the applicable time and she failed to do so.

vi. Constructive Discharge (Objections 16–17)

Finally, the Magistrate Judge reiterated the standard to successfully plead constructive discharge. For constructive discharge, a court must ask "[d]id the working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" (Doc. 74 at 15 (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004); and then citing *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998)).) These circumstances, the Magistrate noted, occur when the working environment "become[s] sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job . . . ." (Doc. 74 at 16 (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000).) The Magistrate determined that "the fact that [Vargas] continued working throughout [a year-long] period [of alleged discrimination] undermines her claim that conditions were intolerable." (Doc. 74 at 16 (citing *Poland v. Chertoff*, 494 F.3d 1174, 1185 (9th Cir. 2007).) Furthermore, Judge Kimmins noted, Vargas's employment could not have been too intolerable since she waited until she was eligible to retire before leaving. (Doc. 74 at 16.) Moreover, Vargas admitted her proposed reclassification to Lead Planner was not intolerable. (*Id.* at 17; *see* Doc. 56-10 at 29.) The Magistrate concluded that her preference for the position of Program Manager; the possibility of a lower classification and salary; and reduced responsibility and exposure were not sufficient to show constructive discharge. (Doc. 74 at 17.)

Vargas believes the Magistrate Judge erred because she did not view the facts in her favor. (Obj. 16, Doc. 83 at 8.) She claims the Magistrate overlooked that her grievance took some time to work its way through the proper channels, and that waiting to retire should not be held against her. (*Id.* at 8.) Vargas also argues that it was the unfair pay differential, not her inability to obtain the position of Program Manager that was important. (Obj. 17, *id.*) This long-term pay discrepancy led to a "breaking point" that forced her to resign. (*Id.*) This constituted constructive discharge. (*Id.*)

The Court disagrees. Vargas admits she did not follow the proper procedures laid

out in the A.D. to resolve her grievance. Furthermore, Judge Kimmins's analysis considered several other factors indicating her circumstances were not unbearable. The Magistrate considered (1) the combined incidents that Vargas claims resulted in constructive discharge, (2) the length of time Vargas remained in her position after the presumed intolerable conditions began, and (3) the failure of Vargas to show discrimination within the final year of employment. Vargas's argument does not undermine the Magistrate's statement, supported by case law, that Vargas's job preference, decrease in responsibility, movement, and visibility did not make her work circumstances so intolerable as to constitute constructive discharge. Judge Kimmins appropriately determined that, viewing the facts in the light most favorable to Vargas, as a matter of law she had not shown she suffered constructive discharge. The Court will not conclude otherwise.

## V.  CONCLUSION

The Court agrees with the factual findings and legal conclusions of the Magistrate Judge. Because Vargas has not demonstrated she suffered an adverse action within the necessary timeframe, that she was qualified for the position of HCD Deputy Director, that there were similarly situated men that were treated differently from her, and that she was constructively discharged, she has failed to establish a prima facie case of sex discrimination under Title VII.

Accordingly, IT IS ORDERED:

1) The Report and Recommendation is ADOPTED. (Doc. 74.)
2) Defendant City of Tucson's Motion for Summary Judgment is GRANTED. (Doc. 55.)

Dated this 10th day of February, 2021.

Honorable Raner C. Collins
Senior United States District Judge